Zelma **WYCHE**, et al.,
**Plaintiffs-Appellees,**

v.

**MADISON PARISH POLICE JURY and Madison Parish School Board, Defendants-Appellants.**

No. 84–4739.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1985.

James David Caldwell, Tallulah, La., Kenneth E. Selle, Special Master, Ruston, La., William Guste, Atty. Gen., Baton Rouge, La., for defendants-appellants.

Raymond Lee Cannon, Tallulah, La., for plaintiffs-appellees.

Before CLARK, Chief Judge, THORN-BERRY and JONES, Circuit Judges.

PER CURIAM:

Defendants challenge the district court's adoption of a voter apportionment plan for the Madison Parish Police Jury and School Board. We affirm.

I.

The constitutional apportionment of voters in Madison Parish has been in litigation since 1968. In February 1981 this court let stand an apportionment plan imposed by the district court without definitively ruling on the plan's validity. *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151, 1163 (5th Cir.1981). This course of action was adopted because of the pending release of the data compiled by the 1980 census. The panel reasoned that this data would most likely require changes in any plan calculated without it. The district court's plan was affirmed, but plaintiffs were authorized to apply for further relief if the defendants failed to adopt a satisfactory plan within six months after publication of the 1980 census data. *Id.*

In February 1982 the defendants adopted a reapportionment plan based on the 1980 census and submitted it to the Department of Justice. Justice refused to approve it. When defendants did not make any resubmission as of July 27, 1982, plaintiffs moved for additional relief in accordance with this court's opinion. Defendants have not officially adopted any reapportionment plan. Defendants' brief states that they refrained from resubmitting a modified plan for Department of Justice approval to accommodate the wishes of the district court. At argument, counsel explained that the members of the Police Jury and the Board also wished to proceed without drawing another legislative plan in order to expedite the resolution of this matter.

On October 1, 1982 the district judge appointed a special master to draft and submit to the court a plan or plans of reapportionment that would satisfy the criteria set forth by this court. He instructed the master to consult with both sides during this process. Four plans were submitted in December 1982. In March 1983 the court ordered the master to conduct special area headcounts in certain districts because of discrepancies in the census data and to recalculate his plans accordingly.

This case was tried on April 14, 1983. On that date, eight plans were submitted to the district court. Four were opposed by all parties. The defendants urged the court to adopt the plan drafted by the special master labeled 8C. This was a modified version of the plan rejected by the Justice Department. Defendants contended that the changes eliminated the feature to which the Justice Department had objected. The master described Plan 8C as representing the least change from the plan reviewed by this court in 1981.

Plaintiffs advocated two of the special master's plans: 8D and 8E. Plan 8E had been prepared by the master at plaintiffs' insistence on the evening before trial. Defendants were unaware of its existence until the trial began. When defense counsel brought this fact to the court's attention, the court allowed all parties ten days to file written comments on the plan so as to avoid any prejudice.

In his trial testimony, the special master identified a flaw in Plan 8E—an "alleyway" that extended from District 7 of the plan. He thought the alleyway had the appearance of a gerrymander. It strengthened the black majority in District 7. After trial, upon plaintiffs' request, the court instructed the master to modify Plan 8E to correct the alleyway. This change removed much of the geographical distortion in the original plan and also decreased the overall deviation range to an acceptable level.

Although the district court did not enter a final judgment until October 23, 1984, the defendants made no further comment or objection to Plans 8E or 8E modified. On that date, the district court adopted the modified version of Plan 8E and ordered that elections be held in accordance with its provisions. This appeal followed.

## II.

### A.

█ Defendants contend that the district court erred by adopting the modified plan without holding an evidentiary hearing on the impact of the changes. We decline to reach the merits of their argument. The record contains a letter dated April 21, 1983 from defendants' attorney to the court acknowledging his awareness of the proposed change regarding the alleyway. In the letter, counsel objected to any post-trial change in the plans submitted, but did not request an evidentiary hearing. This request was first made in a motion filed after the entry of judgment eighteen months later. By failing to present their request to the district court during the long interim between the trial and the entry of judgment, defendants waived any right to a hearing they might have had.

### B.

█ Defendants also maintain that the district court failed to give proper deference to the fact that the relevant governing

bodies—the Police Jury and the School Board—favored Plan 8C. They rely on *Jones v. City of Lubbock*, 727 F.2d 364, 386–87 (5th Cir.1984), which states that a legislative plan should not be rejected unless the district court determines that it is unlawful. However, as defendants conceded at argument, 8C is not a legislative plan, but one devised by the special master at the order of the court. A court-ordered plan is subject to a more stringent standard than is a legislative plan. *Wyche*, 635 F.2d at 1159. Many factors, such as the protection of incumbents, that are appropriate in the legislative development of an apportionment plan have no place in a plan formulated by the courts. *Id.* at 1160. Therefore, the fact that a governing body expresses a preference for one court-proposed plan over another does not oblige the district court to give any special deference to that plan. It is proper to consider such preference, but only as one of the factors that the district court must weigh in evaluating the different plans.

### C.

The district court has considerable discretion in adopting a court-ordered apportionment plan. *Wyche*, 635 F.2d at 1163. Plan 8E as modified adheres to the guidelines established in our 1981 opinion. It avoids diluting minority voting strength while fixing boundaries that are "compact, contiguous and that preserve natural, political and traditional representation." *Id.* The duty of the federal courts in this matter is complete.

### III.

The judgment of the district court is AFFIRMED.