Clarence E. DYE, et al.

v.

W. Fox McKEITHEN, et al.

Civ. No. 94–0480.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 28, 1994.

C. Allen Bradley, Jr., DeRidder, LA, for plaintiffs.

Sheri Marcus Morris, LA Secy of State, Baton Rouge, LA, for W. Fox McKeithen.

Michael J. Juneau, Juneau Firm, Lafayette, LA, for all other defendants.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court is the plaintiff's motion for injunctive relief in a reapportionment suit which challenges the validity of the Vernon Parish School Board reapportionment based upon the 1990 census figures. This resolution was adopted November 10, 1992, and was subsequently modified on March 29, 1994. The plaintiffs are residents and registered voters in Vernon Parish.

LSA R.S. 17:71.1 et seq. provides for a reapportionment of school board districts based upon census results. The Vernon Parish School Board, on November 10, 1992, approved a reapportionment resolution which divided the School Board into eight voting districts, one district electing two members with residency requirements, a four member at-large district and six single member districts.

The plaintiffs allege that the November 10 resolution was legally deficient and not published in the Official Journal of the Vernon Parish School Board as required by state law. The original resolution failed to include two precincts and included one precinct twice. On March 29, 1994, the School Board passed another resolution in which it attempted to cure any deficits in the original resolution, but the plaintiffs allege that this resolution was also lacking.

The reapportionment plan as adopted by the School Board excluded Census Tract 9507 in its entirety. Census tract 9507 is coterminous with the boundaries of the Fort Polk Military reservation. The submission package prepared for the Department of Justice stated that Census Block 9507 was excluded because "[T]he vast majority of the population of Fort Polk does not participate in local elections. The large quantity of active duty personnel and dependents make a large skew in the population totals of the Parish." The plaintiffs argue that the exclusion of active duty military personnel and their family members is a direct violation of the United States Constitution, the Fourteenth Amendment, Article I Section 3 of the Louisiana Constitution and various Louisiana statutes.

The plaintiffs assert that the method of exclusion in which active duty members living in Census Tract 9507 were excluded, yet active duty personnel outside of Tract 9507 were included, was done in an arbitrary and discriminatory fashion, thereby violating state and federal constitutional requirements of equal protection. The plaintiffs also contend that even if it is permissible to exclude the population of Tract 9507, the reapportionment plan still violates the Fourteenth Amendment, the Louisiana Constitution and other provisions of Louisiana law by having overall deviations in excess of acceptable standards.

The plaintiffs further contend that residency requirements applicable to only one precinct violates the Equal Protection clause of the Fourteenth Amendment in that voters in one district are treated in a manner inconsistent with voters in other precincts.

The plaintiffs' case sets forth four separate and distinct causes of action:

1. The reapportionment plan, as adopted, violates R.S. 17:71 et seq.;

2. The adopted reapportionment plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I Section 3 of the Louisiana Constitution;

3. Assuming that the exclusion of Census Tract 9507 was constitutionally permissible, which the plaintiffs at all times deny, the reapportionment plan as adopted still fails to meet constitutional standards; and

4. The creation of District 1, with the election of two members from residency districts of less than at-large district boundaries constitutes a violation of the Equal Protection Clause.

This court held a hearing April 6, 1994, on the motion for a temporary restraining order at which all parties agreed to the issuance of a preliminary injunction. It was further agreed that any evidence taken that day was

evidence on the merits, and the hearing was continued on May 31 and June 1 to determine if a permanent injunction is mandated by the law as alleged by the plaintiffs.

The Plaintiffs and Vernon Parish filed pre- and post-trial memoranda and did an excellent and thorough job of presenting their respective cases to this court. Having had three days of evidentiary hearings and having such memoranda before the court, we will now discuss each cause of action in reaching our determination.

### Law and Argument

This court has jurisdiction under 28 U.S.C. §§ 1331, 1343, et seq., the Fourteenth Amendment to the United States Constitution and pendent jurisdiction of the claims asserted under the Louisiana Constitution and laws. Jurisdiction is not disputed. There are no violations of the Fifteenth Amendment alleged in this case.

### Injunction

■ The standard for determining whether a permanent versus a preliminary injunction should issue is primarily the same, except that the Court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits. *Amoco Production Co. v. Village of Gambel, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987) (citation omitted).

■ Normally, in order to obtain a preliminary injunction, the plaintiff has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to him outweighs any damage the injunction may cause the non-movant; and (4) that the injunction will not disserve the public interest. *Plains Cotton Coop. Ass'n v. Goodpasture Computer Service,* 807 F.2d 1256, 1259 (5th Cir.), cert. den. 484 U.S. 821, 108 S.Ct. 80, 98 L.Ed.2d 42 (1987); see also *Doe v. Duncanville Independent School District,* 994 F.2d 160 (5th Cir.1993); *Apple Barrel Products v. Beard,* 730 F.2d 384, 386 (5th Cir.1984).

■ To be entitled to a permanent injunction from a constitutional violation, however, a plaintiff need only establish the fact that there has been such a violation. Then he must demonstrate the existence of two elements: continuing irreparable injury if the injunction does not issue, and the lack of an adequate remedy at law. *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir. 1982), cert. den. 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). For the reasons stated herein this court finds that the plaintiff has proven continuing irreparable injury if the injunction does not issue, and under the facts of this case the plaintiffs have no other adequate remedy at law aside from instituting this suit pursuant to 42 U.S.C.A. § 1971 et seq.

This court further finds, as discussed hereinafter, that the proposed application of the reapportionment statute is unconstitutional and a violation of state law as well. Accordingly, there is a substantial threat of continuing irreparable injury if the permanent injunction is not granted and the elections for school board members are permitted to take place. The potential injury of an election in which citizens are deprived of their right to vote negates any damage that may be sustained by Vernon Parish in the potential delay of elections. Should an election in November, as presently scheduled prove impossible, the incumbents would stay in office until an acceptable plan has been adopted. Thus, this court finds that a permanent injunction would prevent irreparable injury to the movants, not unduly damage the nonmovant, and be in the best interest of the public.

### First Cause of Action

School Boards are required under Louisiana law to reapportion themselves every ten years in accordance with the provisions of LSA R.S. 17:71.1 et seq.. LSA RS 17:71.1 contains the legislative authority for reapportionment and states:

> Each of the parish and city school boards, as heretofore created and organized, is hereby authorized to reapportion itself so that each member of said school board represents as nearly as possible the same number of persons. Such reapportionment

shall be based upon the 1970 federal census, or a special census as authorized hereinafter, and shall be accomplished and become effective when a school board has complied with the provisions of R.S. 17:71.4.

R.S. 17:71.4 states:

After each of said school boards has decided on its makeup, as reapportioned, it shall adopt a resolution, establishing the size of the board, terms of office of its members, date of election of its members and boundary lines of its special election districts, and stating the effective date of such reapportionment. This resolution shall be published in the official journal of the board and shall become effective and have the status of law as of the date specified in said resolution.

As seen above, LSA R.S. 17:71.4 contains a requirement that the School Board pass a resolution containing the information set forth in that statute. This resolution is required to be published in the official journal of the Board and shall become effective and have the status of law as of the date specified in said resolution.

■ The plaintiffs allege that the November 10, 1992, resolution violates R.S. 17:71.1 et seq. because it failed to include Vernon Parish precincts 7–2A and 1–2A in any designated voting district and because it included precinct 7–2 in two different voting districts. The testimony of Gary Joiner, the defendants' expert witness, also indicated that the resolution was not in compliance with the statute in that it did not establish the size of the Board, the terms of office of the members, and the effective date of reapportionment. Furthermore, the resolution has never been published in the Official Journal of the Parish as required by Louisiana law.

On March 29, 1994, the School Board met in special session and adopted a new resolution in which they attempted to cure the defects of the prior resolution. The plaintiffs allege and the testimony of Joiner affirms that this resolution also falls short of statutory requirements. The plaintiffs further allege that this March 29 resolution violates the Voting Rights Act, 42 U.S.C. § 1971 et seq., as the resolution was not submitted to the Department of Justice, which is required because it changes the composition of voting precincts.

■ R.S. 17:71.4 does contain a clear requirement that the resolution adopting the reapportionment plan be published. It is uncontested that neither the November 10 resolution, nor the resolution of March 29, 1994 were published. The U.S. Supreme Court, in *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 658, 105 105 S.Ct. 2265, 2285, 85 L.Ed.2d 652 (1985), noted that an affirmative publication requirement "operates as a command in the same sense as a statute or regulation forbidding [someone] to publish specified matter." Therefore, such a requirement raises substantial First Amendment concerns. Citing *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 256, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974).[1] However, the plaintiffs in this case are not attacking the constitutionality of the reapportionment statutes. Rather, the plaintiffs are attacking only the failure of adherence to these statutes by the Vernon Parish School Board.

■ It is a prerogative of the legislature to delegate to administrative boards and agencies of the state the power and authority of ascertaining and determining facts upon which laws are to be applied and enforced. *Pettit v. Penn,* 180 So.2d 66 (La.App. 2d Cir.1966). In applying these provisions, the School Board is delegated some legislative authority. The legislature may make the operation or application of a statute contingent upon the existence of certain conditions, and may delegate to an administrative board the power to determine the existence of such facts and to carry out the terms of the statute. *Francis v. Louisiana State Livestock Sanitary Bd.,* 184 So.2d 247 (La.App. 1st Cir.1966); *Schwegmann Brothers Giant Su-*

---

1. Questions of statutory interpretation, especially when arising in the first instance of judicial proceedings, are for the court to resolve, giving appropriate weight to the judgment to those whose special duty is to administer the questioned statute. *National Labor Rel. Board v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

permarkets v. McCrory, 237 La. 768, 112 So.2d 606 (La.1959).

█ LSA R.S 17:71 et seq. does not delegate unlimited legislative authority to the school board. The Board is authorized to do only those acts expressly or implicitly granted to them by the legislature. La. Associated Gen. Contractors v. Calcasieu Parish School Bd., 586 So.2d 1354, 1361, 1367 (La. 1991). The judiciary is constitutionally burdened with the responsibility of determining whether the Board's actions, or inactions, violate a statute. Coleman v. Caddo Parish School Board, 635 So.2d 1238 (La.App. 2d Cir.1994).

█ The statutory language at issue is not alleged, nor found, to be ambiguous. The language must therefore be given a genuine construction in accordance with the fair import of the words used, taken in their usual sense, and considering their context. LSA R.S. 1:3; State Dept. of Social Services v. Parker, 595 So.2d 815 (La.App. 2d Cir.1992). Courts may not disregard the clear wording of a statute under the pretext of pursuing its spirit. LSA R.S. 1:4; Jungina v. Stafford, 535 So.2d 794 (La.App. 2d Cir.1988).

Neither the express wording of the statute, nor the allocation of authority between the legislature and the school board in these circumstances, which we discussed above, suggests or requires that the statute be strictly or narrowly construed in favor of either litigant. Coleman, 635 So.2d at 1247. The proper statutory construction then, is a fair and reasonable construction in light of the statute's purpose. J.M. Brown Const. Co. v. D & M Mechanical Con., Inc., 275 So.2d 401 (La.1973).

█ An action taken by an administrative board, such as a school board, in order to be valid, must fall within its legislative grant of authority. Realty Mart, Inc. v. La. Bd. of Tax Appeals, 336 So.2d 52 (La.App. 2d Cir. 1976). Clearly, the Vernon Parish School Board did not comply with the statutory mandate regarding the content of the required resolution, nor regarding its publication. It follows that the actions of the School Board were in violation of the express statutory provisions governing the reapportion-ment of the school board districts. Mayor & Council v. Ascension Parish Police Jury, 468 So.2d 1291, 1297 (La.App. 1st Cir.1985).

█ The plaintiffs, in their Memorandum dated May 18, 1994, also allege, as part of their first cause of action, that the defendants violated the Voting Rights Act by failing to submit the resolution adopted on March 29, 1994, as required by 42 U.S.C.A. § 1971, et seq. The plaintiffs submit that such a submission was required since the reapportionment resolution of March 29 repealed the resolution of November 10 and made changes in the composition of voting precincts. The parties did not, however, thoroughly brief this issue.

█ There is jurisprudential precedent that where an action seeking compliance with the "one man, one vote" requirements of the United States Constitution involves no racial discrimination in the exercise of the franchise under U.S.C.A. Const.Amend. 15, it is not necessary that the reapportionment plan be submitted to the Attorney General of the United States. Connor v. Johnson, 330 F.Supp. 506 (S.D.Miss.1971), motion granted 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268, rehearing denied 403 U.S. 924, 91 S.Ct. 2220, 29 L.Ed.2d 702, on remand 330 F.Supp. 521. Absent any authority to the contrary, since this case does not involve an allegation of racial discrimination, this court holds that the Vernon Parish School Board did not violate 42 U.S.C.A. § 1971 by failing to submit the March 29 resolution to the Attorney General.

42 U.S.C. § 1973c requires that any political subdivision seeking to "administer any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting...." must file in the District Court for the District of Columbia a declaratory judgment action or such actions must be approved by the Attorney General. The statute does not differentiate between original plans and modifications to those plans. The statute uses the word "any" and this court interprets that to mean that the March 29, 1994 resolution should have been submitted pursuant to 42 U.S.C. § 1973c. Accordingly this court finds that the reapportion-

ment plan violates 42 U.S.C. § 1973c and Louisiana R.S. 17:71 et seq.

### Third Cause of Action

 The plaintiffs argue that, even if the exclusion of Census Tract 9507 was permissible under the law, which they strenuously deny, the reapportionment plan as adopted still fails to meet constitutional standards as the voting districts are not "of nearly equal population as possible" and because the deviation standard exceeds the plus or minus 5% allowed under Louisiana law.

The population of Vernon Parish according to the 1990 census is 61,961 people. The population of the parish excluding Fort Polk is 40,847. If there are twelve people on the School Board, the ideal district, in an attempt to create districts with equal voting population, would be 3,403 people. The population of District 8 per the adopted resolution is 2,179, while the most populous district has an average population of 3979 people. According to Joiner, the deviation from the smallest (District 8 with a deviation of $-35.968\%$) to the largest district (District 9 with a deviation of 16.92%) gives a total deviation of 52.894%. The standard deviation incorporated into RS 17:71.3 is plus or minus 5%. Thus, the plaintiffs allege that the 52.894% deviation is not permissible.

The School Board, in its Post–Trial Brief, conceded that the approved reapportionment resolution violates the provisions of the Louisiana Statutes (plaintiffs' cause of action number 1) and that the school board's plan exceeds acceptable deviations under federal law (plaintiffs' cause of action number 3). Therefore, a permanent injunction is justified under these two causes of action, but in an effort to give guidance to both the plaintiffs and the defendants, we will discuss the other issues raised in the plaintiffs' pleadings.

### Second Cause of Action

 The plaintiffs' second cause of action alleges that the Vernon Parish reapportionment plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the Louisiana Constitution. The plaintiffs allege that the exclusion of Census Tract 9507, which has boundaries cotermi-nous with the boundaries of the Fort Polk Military Reservation, creates an unequal treatment of active duty military personnel and family members. All parties to this litigation view this issue as the most critical to these proceedings.

LSA R.S. 17:71.1 states that the school boards are to reapportion themselves so that each member of the board represents as nearly as possible the same number of persons. Louisiana law further stipulates that the data derived from the decennial census is to be used for the purpose of reapportionment. LSA R.S. 17:71.1, 71.3(A), and 71.5 (although 71.3(A) only applies when special censuses have been commissioned). The plaintiffs assert that although the use of registered voter rolls are permitted for very limited reapportionment purposes by past decisions rendered by the United States Supreme Court, Louisiana law does not provide for the use of registered voter rolls. The plaintiffs further submit that the United States Supreme Court only provides for the use of registered voter rolls when the result will not be substantially different from the use of a permissible population basis.

The defense contends that reapportionment is proper based upon distribution of eligible voter population. The defendants distinguish between the use of those persons eligible to vote as compared to those actually registered to vote in the parish. For example, those registered to vote and continuing to vote outside of Vernon Parish would not be "eligible voters" under this definition. This is different from the use of registered voter rolls, which the plaintiffs allege the defendants are proposing.

This court agrees with the defendants in their statement that the term "persons" within the Louisiana reapportionment statute has no magical meaning. The Louisiana statute stands for the constitutional principle that representation is to be as equally weighted amongst the population as possible. The court also agrees with the defendants that LSA CC Arts. 24 and 26 prohibit a literal approach to defining "persons" under Louisiana law, as this would include juridical persons and unborn children. The key question

then, is whether "population" means total population or voting population.

Defendants cite *Burns v. Richardson*, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966) and *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151 (5th Cir.1981) as authority for its position that several population bases are acceptable for reapportionment plans—total population, citizen population or eligible voter population. The plaintiffs contend that the United States Supreme Court has recognized and approved of alternative population bases for redistricting in a very limited number of cases.

The Supreme Court has noted that the one person, one vote precept to reapportionment of voting constituencies should be applied to local governments. *Abate v. Mundt*, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971); *Wyche v. Madison Police Jury*, 635 F.2d 1151 (5th Cir.1981). This principle has been applied to local government units, such as school boards, as well. *Panior v. Iberville Parish School Board*, 498 F.2d 1232 (5th Cir.1974).

In *Burns v. Richardson*, 384 U.S. 73, 88–92, 86 S.Ct. 1286, 1295, 16 L.Ed.2d 376 (1966), the United States Supreme Court discussed a dispute over reapportionment using registered voters rather than census figures. This case involved Hawaii, where there was a large disparity between the two figures. In 1960 Oahu's share of Hawaii's total population was 79%. Its share of persons actually registered to vote was 73%. On the basis of total population, Oahu would have been assigned 40 out of 51 seats in the state house of representatives. On the basis of registered voters, it would have been entitled to 37 representatives. The court queried whether this difference was due to the large number of military in the Oahu area. *Burns* was based upon the proposition that both houses of a bicameral state legislature must be apportioned substantially on a population basis.

The Court in *Burns* referred to its prior decision in *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Supreme Court in *Reynolds* held that the existing and two legislatively proposed plans for apportionment of seats in the Alabama Legislature were invalid in that the appor-

tionment was not on a "population basis" and was completely lacking in rationality. The Court in *Burns* noted that in *Reynolds* they had carefully left the discussion open as to exactly what "population" to which they were referring. At several points in *Reynolds,* the court discussed substantial equivalence in terms of voter population or citizen population, making no distinction between the acceptability of such a test and a test based upon total population. See also *WMCA v. Lomenzo*, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964). *Reynolds v. Sims* dealt with total population figures for the state of Virginia based upon 1960 federal census figures. While "[m]athematical exactness or precision" is not required, there must be substantial compliance with the goal of population equality. *Ibid.*

*Burns* concerned an interim plan. The court made it quite clear that they held that the subject reapportionment plan satisfied the Equal Protection Clause *only* because "on this record it was found to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis." *Burns*, 384 U.S. at 93, 86 S.Ct. at 1297. The court in *Burns* also specifically noted that *Burns* did not involve the issue of whether military men had been improperly excluded from the apportionment base, which is the primary argument now before this court.

In *Davis v. Mann*, 377 U.S. 678, 691, 84 S.Ct. 1441, 1448, 12 L.Ed.2d 609 (1964), the Supreme Court rejected the argument that the under representation of three political subdivisions, including military personnel, in Virginia was "constitutionally justifiable" since it allegedly resulted in part from the fact that a large number of military and military-related personnel resided in those areas. The court held that discrimination against a class of individuals, merely because of the nature of their employment without more being shown, was constitutionally impermissible.

*Reynolds* established that both houses of a state legislature must be apportioned so that districts are "as nearly of equal population as

is practicable." 377 U.S. at 577, 84 S.Ct. at 1390. Following *Reynolds,* certain guidelines have been established by the Supreme Court for determining compliance with the basic goal of one person, one vote. In *Swann v. Adams,* 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967) the Court held that a variance of 25.65% in one house and 33.55% in the other was impermissible "absent a satisfactory explanation grounded on acceptable state policy." *Id,* at 444, 87 S.Ct. at 572. In *Swann,* no justification for the deviations was attempted. In the case now before this court, Vernon Parish's DOJ submittal states that the reason for the exclusion of Fort Polk, which creates unacceptable deviations in this case, was based on the following reasons:

1) A historical basis in that the police jury plan approved by DOJ in 1991 was approved with this feature;

2) the current school board plan was approved by DOJ and was upheld by the federal court; and

3) the vast majority of active duty personnel at Fort Polk do not participate in elections.

Although the police jury plan may have been approved by DOJ with the exclusion of Fort Polk, this plan was not reviewed by the court. In referring to the "current school board plan", we must assume that reference is being made to the plan in effect in the 1980's, as the current resolution has not been upheld by the federal court. That plan in effect in the 1980's was upheld in the federal court, but the exclusion of Census Tract 9507 was not an issue before the court at that time.

The Supreme Court has acknowledged that some leeway may exist in the equal population requirement in state legislative redistricting plans as opposed to congressional redistricting, where population equity is the preeminent, if not sole, criterion on which the court judges constitutionality. *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *White v. Weiser,* 412 U.S. 783, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973).

In *Chapman v. Meier,* 420 U.S. 1, 26–27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975), the Court found that North Dakota's federal court's allowance of a 20% variance in the plan was unacceptable in the absence of a showing of significant state policies or other acceptable considerations that require adoption of a plan with so great a variance. The North Dakota case was based upon total population as reflected by the 1970 federal census. The variance between the smallest and the largest district in the Vernon Parish plan exceeds 50% based upon 1990 federal census figures.

The majority of other cases have been decided based upon total population as reflected in the federal census figures, not on total voter or eligible voter population. *Wyche v. Madison Parish Police Jury,* 769 F.2d 265 (5th Cir.1985). The population equity principle requires a quantitative analysis which typically focuses on whether deviations from the average or median population district are impermissibly large. *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973).

In redistricting plans, other than those involving congressmen, "under 10% deviations ... [have been] considered to be prima facia constitutionally valid ... in the context of legislatively enacted apportionments." *Connor v. Finch,* 431 U.S. 407, 418, 97 S.Ct. 1828, 1835, 52 L.Ed.2d 465, 475 (1977). See *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973) (7.83% total deviation from the population norm held valid; *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973) (9.9% total deviation from population norm upheld). The Louisiana statute contains a mandate for a +/− 5% deviation.

We agree with the plaintiffs' position that the Court has recognized and approved the use of alternate population bases for redistricting only in a limited number of cases. In *Burns v. Richardson,* supra, the issue of military exclusion was not before the court. The court cited *Davis v. Mann,* supra, as the controlling law on that issue. The court in *Burns,* as noted hereinabove, stated that alternative population bases could be used to create a plan only if the results of such a plan would not be substantially different from that

which would have resulted from the use of the population based upon a permissible population basis, i.e. the census data. The exclusion of Census Block 9507 in this case excludes 21,114 people. The results based upon a voting population as compared to a total population differs substantially and therefore, is not constitutionally acceptable. The plan, as adopted, provides a total deviation of 52.65%, well in excess of the constitutionally acceptable deviation. Therefore, when this plan is redrafted, the reapportionment must be based upon total population as set forth in the 1990 federal census, not based upon eligible or registered voter population.

### Fourth Cause of Action

The plaintiffs contend that District 1, which calls for the election of two members from residency districts of less than at-large boundaries, constitutes a violation of the Equal Protection Clause.

Under the adopted resolution, two members are to be elected at-large, but one is to be elected from a resident of Subdistrict 1–A and one from a resident of Subdistrict 1–B. So, the members of District 1 can essentially vote for two members of the school board while members of Districts 3, 4, 5, 6, 7, and 8 only elect one board member. The combined subdistricts of District 1 represent a deviation of −7.84% below the population standard of 6,808. Although the plaintiffs assert that this method may cure an alleged defect in the reapportionment plan, they also submit that this district, as drawn and implemented, would have a chilling effect on the pool of candidates who wish to seek election. With no clearly stated policy by the school board as to why this district was configured this way, the plaintiffs posit that we can only speculate as to why the voters in this District were treated differently from the voters in other Districts. The defendants do not specifically address this argument in their responsive briefs and neither party cited any law in support of their position.

■ At-large voting is not per se unconstitutional. *Lodge v. Buxton,* 639 F.2d 1358 (5th Cir.1981); U.S.C.A. Const.Amend. 1, 14, 15; 42 U.S.C.A. §§ 1971 et seq. Residency requirements may be a deterrent to some

people seeking office. The Supreme Court has made it clear, however, that mere deterrence is not sufficient for a successful constitutional attack. *Bullock v. Carter,* 405 U.S. 134, 142–143, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972). The key to this issue is who is excluded. The residency requirement is not unconstitutional on its face unless it is "so restrictive that [it] denies a cognizable group a meaningful right to representation." Tribe, American Constitutional Law, §§ 13–19 (1978).

■ An essential element of a prima facie case under the Fourteenth or Fifteenth Amendments asserting unconstitutional vote dilution through the maintenance of an at-large electoral system is proof of unresponsiveness by the public body in question to the group claiming the injury. This responsiveness is a determinative factor only in its absence, and proof of unresponsiveness does not establish a prima facie case sufficient to shift the burden of proof to the party defending the constitutionality. *Lodge v. Buxton,* 639 F.2d 1358 (5th Cir.1981). Based upon the evidence presented by the plaintiffs, this court cannot say as a matter of law that the residency requirement in District 1 limits anyone's access to the political process.

In *Bradas v. Rapides Police Jury,* 508 F.2d 1109 (5th Cir.1975), the citizens of Rapides Parish filed a suit alleging that their proposed reapportionment plan violated the one-vote, one-man rule and resulted in the dilution of the black vote in violation of the Fifteenth Amendment. Under the proposed plan the eleven wards of Rapides Parish were divided into one single-member and three multi-member districts for police jury and school board elections. The plan also included residency requirements. For example, in District A, 8 of 10 members were required to reside in Ward 1 and the other two were required to reside in Ward 8. The District Court rejected the proposed plan based upon a dilution of black votes under the Fifteenth Amendment and drew up its own plan in which nine single member districts were created. On appeal the Fifth Circuit reversed the District Court and ordered that the original plan be reinstated,

finding no violation of the Fourteenth or Fifteenth Amendments in the proposed plan.

When the class being considered is not a suspect classification, i.e. sex, religion, or race, the rational basis analysis is the appropriate standard to review whether a formula violates equal protection. *Town of Ball v. Rapides Parish Police Jury*, 746 F.2d 1049 (5th Cir.1984). In a rational basis analysis the Court presumes that the challenged statutory distinctions are constitutional and requires only that they be rationally related to a legitimate state interest. *Sandefur v. Cherry*, 718 F.2d 682, 688 (5th Cir.), modified, 721 F.2d 511 (5th Cir.1983). In determining whether that standard has been met, the Court asks two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? *Western & S. Life Co. v. State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). Under the rational basis analysis the statute will be sustained if the law-making body could have reasonably concluded that the challenged classification would promote a legitimate state purpose. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461–462, 101 S.Ct. 715, 722–723, 66 L.Ed.2d 659 (1981).

In the present case we do not know the specific reason for the School Board's making only District 1 a multi-member district, nor do we know why a residency requirement was instituted in this district. If however, these steps were taken in order to facilitate the one man, one vote principle and to lessen the deviation in this district to acceptable limits, it would theoretically appear not to violate equal protection. Based upon the lack of evidence on this issue before the court, we will decline to make a ruling on this cause of action at this time. In the drafting of a new reapportionment plan, however, the plaintiffs should take note that the mere existence of a multi-member district and residency requirements are not sufficient to sustain a claim asserting the violation of equal protection.

## Conclusion

Reapportionment is primarily the duty of the State through its Legislature or other body, rather than of the federal court. *Reynolds v. Sims*, 377 U.S. at 586, 84 S.Ct. at 1394; *Maryland Committee v. Tawes*, 377 U.S. 656, 676, 84 S.Ct. 1429, 1440, 12 L.Ed.2d 595 (1964); *Chapman v. Meier*, 420 U.S. at 26–27, 95 S.Ct. at 766.

This court holds that the proposed reapportionment plan must be stricken as it violates the United States Constitution as well as Louisiana law. Therefore a permanent injunction will be issued in accordance with this ruling. The court will order the School Board to perform its duty and enact a constitutionally acceptable plan. If it fails at that task, the responsibility will then fall to this court and we will take whatever steps necessary to resolve the problem with due dispatch.

The plaintiffs have also alleged that they are entitled to attorneys fees in this matter. The parties will be ordered to file memoranda of law in support of or in opposition to this motion.

## JUDGMENT AND PERMANENT INJUNCTION

In accordance with this court's corresponding memorandum ruling and for the reasons set forth therein,

IT IS ORDERED, ADJUDGED, AND DECREED, that a permanent injunction issue, enjoining the defendants, and their respective officers, agents, employees, successors, attorneys, and other persons under their direction and control, from taking any actions in preparation for or in implementation of the November 10, 1993 and March 29, 1994 Redistricting Resolutions of the Vernon Parish School Board, including specifically taking any actions to allow persons to qualify as candidates for election to the Vernon Parish School Board in the school board districts established by said resolutions, or to conduct any election in conjunction therewith.

IT IS FURTHER ORDERED that the Vernon Parish School Board shall have sixty (60) days from the date of this judgment to adopt a constitutionally acceptable reappor-

314

tionment plan. Qualifying for school board positions shall begin on the fourteenth day from the passing of the resolution and candidates shall have one week to qualify for the election. The election of school board officials shall take place on November 8, 1994 during regularly scheduled elections.

IT IS FURTHER ORDERED that the plaintiffs shall file a brief in support of their request for attorney fees together with supporting time and expense records to support the amount requested within fifteen (15) days from the date hereof. Defendants shall then have fifteen days from the date of the plaintiffs' brief to file a responsive brief.