**John DOE and Jane Doe, as Next Friends of Sarah Doe, Plaintiffs,**

v.

**RAINS INDEPENDENT SCHOOL DISTRICT, et. al., Defendants.**

**No. 6:93 CV 124.**

United States District Court,
E.D. Texas,
Tyler Division.

Sept. 30, 1994.

---

Augustus William Arnold, III, and Deborah Junek, Gwinn & Roby, Dallas, TX, for John Doe and Jane Doe.

Darrell G–M Noga, John Lynch Munn, Cooper Huddleston & Aldous, Dallas, TX, for Rains County Independent School Dist., Guy Harrison, Ginger Mabry, Bob Clopton and Arthur Talkington.

Thomas Phillip Brandt, Fanning Harper & Martinson, Dallas, TX, Paul M. Boyd, Foley & Boyd, Tyler, TX, for Dana White.

Clifton Lee Holmes, Holmes Law Office, Longview, TX, David John LaBrec, Kevin Jerome Maguire, Kristi Kay Cox, Strasburger & Price, Dallas, TX, for David W. Siepert.

## ORDER

JUSTICE, District Justice.

### I. Background

John and Jane Doe bring this civil rights lawsuit as next friends of their minor daughter, Sarah Doe. Plaintiffs charge, *inter alia*, that defendants, acting under color of state law, deprived Sarah Doe of her rights secured by the Fourteenth Amendment's Due Process and Equal Protection clauses, in violation of 42 U.S.C. § 1983. Specifically, plaintiffs allege defendant David Siepert; Doe's high school teacher and coach, sexually abused her, thereby despoiling her of her constitutionally protected liberty interest in bodily integrity.

Plaintiffs joined defendant Dana White, also a Rains Independent School District teacher, because White knew of Doe and Siepert's "relationship," but waited several months to report it to authorities. In addition to their federal claims, plaintiffs assert several supplemental state law claims against White arising from her failure to report Doe's sexual abuse as required by the Texas Child Abuse Reporting Act, Tex.Fam.Code Ann. § 34.01 *et seq.* (Vernon 1986).

White has filed several motions for summary judgement. This order will address only White's first and second motions for summary judgment. Those motions collectively argue: that plaintiffs' claims against her in her official capacity should be dismissed as redundant; that plaintiffs' fail to state a claim against her under 42 U.S.C. § 1983; that White is entitled to qualified immunity; that White is entitled to immunity under state law; that White did not act under color of state law; that White is immune from suit because she eventually reported Doe's relationship with Siepert; and that plaintiffs' state law claims under the Texas Family Code fail as a matter of law. For the reasons set forth below, White's first motion for summary judgment in her official capacity shall be granted, but White's motions for summary judgment in her individual capacity will be denied.

### II. Standard

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law underlying the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If any such facts are genuinely in dispute, summary judgment is inappropriate. A factual dispute is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 975 (5th Cir.1991). The judge is not to weigh the evidence, nor engage in

credibility determinations. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## III. Analysis

### A. Official Capacity Claims

■ White, in her first summary judgment motion, contends that the claims asserted against her in her official capacity should be dismissed because they are redundant. It is now well established that suits against a municipal officer in their official capacity are indistinguishable from suits against the municipality. *See Hafer v. Melo,* 502 U.S. 21, ——, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) ("A suit against a state official in her official capacity therefore should be treated as a suit against the State"); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). An official capacity suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)).

Plaintiffs' claims against White in her *official capacity* are redundant and unnecessary because any disputed issues that must be resolved in conjunction with the official capacity claims are the same as those requiring resolution in the claims against the school district. *See Doe v. Douglas County School District Re–1,* 775 F.Supp. 1414, 1416–17 (D.Colo.1991) (holding the elements of proof are identical between plaintiff's official capacity claim and plaintiff's claim against the school district). Accordingly, White's motion for summary judgment in her official capacity shall be granted.

### B. Individual Capacity Claims

■ White urges that plaintiffs' section 1983 claim fails as a matter of law. Apparently, White's argument is that teachers cannot be held liable for their fellow-teacher's violation of a student's constitutional rights. In support of this proposition, White points to a statement in the Honorable Patrick E. Higginbotham's concurring opinion in *Doe v. Taylor Independent School District,* 15 F.3d 443 (5th Cir.1994) (*en banc*):

> Consider a classroom teacher in the same school as Coach Stroud who had full knowledge of Coach Stroud's activities but looked the other way. Any moral duty aside, no one suggests that § 1983 imposes liability upon this silent teacher. This conclusion is found in the role of state law.

*Id.* at 464 (Higginbotham, J., concurring). Certainly, at first glance, this statement appears to support White's argument. When the statement is viewed in context, however, it does not stand for the proposition White advances.

In *Taylor,* the United States Court of Appeals for the Fifth Circuit determined that school officials could be held liable for constitutional deprivations inflicted upon students if they exhibited deliberate indifference to the students' rights. *Id.* at 454. The defendants in *Taylor,* a high school principal and school district superintendent, fell within the purview of section 1983 because, under state law, they were obligated to supervise teachers. *See id.* at 454 (adopting test determining school official's supervisory liability in physical sexual abuse cases).

In his concurrence, Judge Higginbotham explicated the role state law plays in litigation designed to protect federal rights. "State law allows us 'to identify the persons responsible for [the] civil rights violation'. . . . put another way, state law guides us in circling state actors who fairly can be said to have caused Doe to be subjected to the rights violation." *Id.* at 463 (citation omitted) (Higginbotham, J., concurring). Taken in this context, Judge Higginbotham's hypothetical is grounded in the assumption that, unlike principals and superintendents, state law does *not* impose a duty on teachers to guard against constitutional violations perpetrated by other teachers.

In fact, state law does impose an affirmative duty on teachers to report sexual abuse of students. The Texas Child Abuse Reporting Act requires:

> Any person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by

abuse or neglect shall report in accordance with Section 34.02 of this code.

Tex.Fam.Code Ann. § 34.01 *et seq.* (Vernon Supp.1994). If the person is a professional, the Child Abuse Reporting Act requires the professional to report the abuse within forty eight hours and file a written report within five days. Tex.Fam.Code.Ann. § 34.02(d). Teachers are explicitly defined as professionals by the Act. *Id.* at § 34.02(b).

As state law imposes a duty on teachers to guard against the sexual abuse of school children, it follows that teachers who disregard that duty can be held liable under section 1983. White's argument, that plaintiffs' have failed to state a cognizable claim under section 1983 against her in her individual capacity, is without merit.

■ White next argues that she is entitled to qualified immunity. The Fifth Circuit's qualified immunity analysis in *Taylor* informs the analysis in the instant action. Under the shield of qualified immunity, White cannot be held liable unless Doe's constitutional rights and White's duty with respect to those rights were clearly established when the events giving rise to the instant action occurred. *Taylor*, 15 F.3d at 454. In *Taylor*, the court determined that a student's constitutionally protected liberty interest in bodily integrity was clearly established by 1987, so the only remaining issues are whether White owed students like Doe any duties, and if so, whether those duties was clearly established at the time these events took place. *See id.* at 456.

As previously stated, Texas law imposes on teachers the duty to report sexual abuse perpetrated against students within forty eight hours of learning of the abuse. White can only be held personally liable under section 1983, however, for those constitutional deprivations her actions or inactions actually caused, for as the Fifth Circuit noted in *Taylor*, liability under section 1983 cannot be based on a theory of *respondeat superior.* *Taylor*, 15 F.3d at 452.

In *Taylor*, the court enunciated a test designed to delimit a supervisor's personal liability under section 1983 so that a supervisor is only liable for those constitutional viola-

tions which their actions or omissions cause. *Id.* at 454. While White was not a supervisor, White had an affirmative duty to protect students from sexual abuse. This duty is similar to the responsibility owed by supervisors to guard against constitutional deprivations perpetrated by their subordinates. It follows that the test announced in *Taylor* is the proper framework from which to determine whether White can be held personal liability for failing to report sexual abuse committed by a fellow teacher.

■ Under the test enunciated in *Taylor*, in order to impose liability on White, plaintiffs' must establish:

(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a teacher pointing plainly toward the conclusion that the teacher was sexually abusing the student; and

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

*Taylor*, 15 F.3d at 454. Unless White's duty under this test was clearly established at the time of the events giving rise to this lawsuit, White is entitled to the shield of qualified immunity. *See Spann v. Rainey*, 987 F.2d 1110, 1114–15 (5th Cir.1993) (holding reasonableness of official conduct should be judged in light of law at the time the events occurred).

White seems to argue that because there is no case holding a teacher in her position liable under section 1983, her duty under section 1983 was not clearly established. An absence of case-law, however, does not automatically endow teachers in White's position with qualified immunity. Rather, "[i]t suffices that the teacher be aware of general, well-developed legal principles," and the court need not "point to precedent which is factually on all-fours with the case at bar." *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 505 (5th Cir.1987).

■ The proper inquiry, then, is whether, under the law as it stood at the time these

events occurred, it was clear that a teacher could not remain deliberately indifferent to a fellow teacher's sexual molestation of a student and avoid personal liability under section 1983. The Fifth Circuit's precedent in this area clearly establishes that officials owing duties to guard against others' constitutional violations can be held liable under section 1983, if they are deliberately indifferent to violations of constitutional rights. *See Taylor*, 15 F.3d at 455–56 (discussing Fifth Circuit precedent establishing that school official's duty with respect to students' constitutional rights was clearly established in 1987). Hence, no reasonable person in White's position could believe that he or she could remain deliberately indifferent to the ongoing sexual abuse of a student by a fellow teacher and avoid liability under section 1983. White's duty as a school teacher, like the duties owed by principals and superintendents, was clearly established when these events took place.[1]

 Having established that Doe's constitutional right to bodily integrity and White's duty with respect to that right were clearly established when the events which gave rise to this action occurred, it must be determined whether White discharged her duty to Doe and is thus entitled to summary judgment.

White acknowledges that from June 22, 1992, when Doe called her and asked if there is a problem if a condom leaks, through November 12, 1992, when White reported the abuse, White knew Doe was sexually involved with Siepert. *See* White's Supp. Ans. to Pla.'s Interrogs. # 5. Thus, White was

aware of facts pointing plainly toward the conclusion that Siepert was sexually abusing Doe, and plaintiffs have satisfied the first prong of the *Taylor* test.

A reasonable jury could also infer that White was deliberately indifferent to Doe's right not to be sexually abused. A pamphlet, provided to the Rains Independent School District by the Texas Department of Human Services, unequivocally describes White's duties: "if you suspect that a child is being abused or neglected, the law requires that you report it to the Texas Department of Human Services...." *See* Pla's Resp., Ex. T. The pamphlet further provides, "Texas law requires an individual to make a verbal report *immediately* ... professionals must report within 48 hours." *Id.* (emphasis in original). White acknowledges that she knew of the school district's policy of reporting abuse, and was concerned about what might happen if she did not report the abuse. *See* White Dep. at 30–31; White Aff. at 7.[2]

While White had several conversations with Doe on school grounds in which White attempted to convince Doe to report the sexual abuse, White waited several months to report the abuse herself. *See* White's Supp. Ans. to Pla.'s Interrogs. # 5. White acknowledges that Doe revealed to her that Siepert became angry with Doe when Doe refused to babysit for him and that Siepert told Doe he wanted to date her. *Id.*

Additionally, White admits witnessing other incidents where Siepert's conduct with female students on school grounds was clearly inappropriate. White says she saw Sie-

---

**1.** White also argues that under these facts it was not clearly established that White's actions were taken under color of state law. White's argument appears to be that, because she first learned of Siepert and Doe's sexual relationship outside of the school context—in a Christian summer camp—White's actions were not under color of state law. Apparently, the only thing that transpired at the Christian summer camp was that Doe told White she was sexually involved with an unidentified man. White's and Doe's subsequent discussions, however, did not take place at the summer camp. In fact, the summary judgment evidence establishes that many of White and Doe's conversations about Doe's relationship with Siepert took place on school grounds and in the school context. *See* White's Supp.Ans. to Pla.'s Interrogs. # 5.

Moreover, Doe knew White as a teacher before attending the summer camp, as White was Doe's eighth grade computer literacy teacher. Contrary to White's assertions, White's relationship with Doe is sufficiently connected with White's role as a teacher to establish that White's actions were taken under color of state law. *See Taylor*, 15 F.3d at 452 n. 4.

**2.** This evidence is enough to foreclose White's attempt to invoke the exceptional circumstances exception to standard qualified immunity analysis. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). White can hardly claim that she neither knew or should have known the relevant legal standard.

pert conversing with another student in a manner which "if it had been [Doe's] boyfriend talking with [the student] and she had seen them together like [the student] and Siepert were, that she probably would have been upset." *See* White's Supp.Ans. to Pla.'s Interrogs. # 5. White never confronted Siepert about his inappropriate behavior with students. *See* White's Supp.Ans. to Pla.'s Interrogs. # 4. Instead, White placed the onus on Doe, a minor child, to confront Siepert and end the "relationship" or reveal the "relationship" to school officials—a heavy burden for a high school student to shoulder. A reasonable jury could conclude that White's failure to report Siepert's ongoing sexual abuse exhibited deliberate indifference to Doe's Constitutional rights.

Moreover, a reasonable jury could conclude that had White heeded the advice she repeatedly gave Doe—report the abuse—the sexual molestation might have ended, and Siepert's repugnant conduct would have ceased. Thus, the summary judgment evidence adduced by plaintiffs illustrates, in a manner sufficient to avoid summary judgment, that White knew of Siepert's molestation of Doe; that White knew or should have known Doe was unable to end Siepert's abuse on her own; and that White disregarded her obligation to report it. White is not entitled to qualified immunity in her individual capacity.

## C. State Law Claims

■ White further asserts that Texas law entitles her to qualified immunity from plaintiffs' state law cause of action. Under Texas

law, a professional school employee is entitled to immunity from personal liability for discretionary actions the official undertakes within his or her authority, except in circumstances where the official acts negligently in disciplining students. Tex.Educ.Code Ann. § 21.912(b) (Vernon 1986); *See Hopkins v. Spring Independent School Dist.*, 736 S.W.2d 617, 618 (Tex.1987) (discussing tort immunity of professional school employees). White argues that the decision to report, or not to report, Doe's sexual abuse is discretionary, and that she is therefore entitled to immunity.

■ Contrary to White's assertion, and as more fully discussed above, Texas law requires that professionals, such as White, "shall report" child abuse when they have cause to believe a child has been abused. *See* Tex.Fam.Code Ann. § 34.01; 34.02(d) (Vernon 1986). White's duty was not discretionary, it was inextricably clear: she had to report Siepert's abuse of Doe within forty-eight hours of learning sufficient facts to lead her to the conclusion that Siepert was sexually abusing Doe. Accordingly, White is not entitled state-law-based immunity.[3]

■ White argues that plaintiffs' state-law negligence claims premised on White's failure to report Doe's sexual abuse as required by Tex.Fam.Code § 34.01 *et seq.* fail as a matter of law. In this regard, White contends that the Texas Child Abuse Reporting Act does not create an actionable standard of care.[4]

"The Texas Supreme Court has held repeatedly that '[t]he unexcused violation of a

---

**3.** White also claims immunity under Tex.Fam. Code § 34.03. Under that provision, a "person reporting . . . *pursuant to this chapter* is immune from liability, civil or criminal, that might otherwise be incurred or imposed." *Id.* (emphasis added). White asserts that because she eventually reported the sexual abuse, albeit over five months after learning of it, she is entitled to immunity. White, however, failed to report the abuse "pursuant to this chapter" as she did not make the report within forty-eight hours as required by § 34.02(d). Furthermore, White's reliance on *Dominguez v. Kelly*, 786 S.W.2d 749 (Tex.Civ.App.—El Paso 1990, writ denied), is misplaced. In addressing immunity provided by the Texas Child Abuse Reporting Act, the court stated that "imprecise compliance with form requirements, per se, will not vitiate an immunity

provision." *Id.* White's failure to report Doe's abuse for over five months is not merely a failure to comply with the statute's form requirements; her dilatoriness amounts to a total frustration of the statute's purpose "to foster protection for abused children." *Dominguez,* 786 S.W.2d at 752.

**4.** The parties have not addressed whether, in the circumstances of this case, a teacher owes any duties to students under the Texas law of negligence. *See Johnson v. Sawyer,* 4 F.3d 369, 376–77 (5th Cir.1993) (discussing relationship between duties and statutory standards of care under Texas law). As the parties have not joined the issue, it will not be addressed in this order.

statute setting an applicable standard of care constitutes negligence as a matter of law if the statute is designed to prevent an injury to the class of persons to which the injured party belongs.'" *Johnson v. Sawyer*, 4 F.3d 369, 379 (5th Cir.1993) (citing Texas cases). Texas courts have also recognized that a standard of care may be determined by an applicable penal statute. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.1987); *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 549 (Tex.1985).

The Texas Child Abuse Reporting Act makes it a criminal offense to "knowingly fail" to report in accordance with the Act's reporting section. Tex.Fam.Code Ann. § 34.07 (Vernon 1986). Plaintiff Sarah Doe clearly falls within the class sought to be protected by the Act. As one Texas court has stated, the purpose of the Child Abuse Reporting Act is "to foster protection for abused children." *Dominguez*, 786 S.W.2d at 752. Thus, the Act creates a standard of care under Texas law, and White's motion for summary judgment shall be denied.

## IV. Conclusion

For the reasons set forth above, White is entitled to judgment as a matter of law on the claims asserted against her in her official capacity. Plaintiffs, however, state a cognizable claim against White in her individual capacity under section 1983. Additionally, the Child Abuse Reporting Act creates a standard of care under Texas negligence law. Finally, White is not entitled to immunity under the doctrine of qualified immunity or under state law.

Accordingly, White's first motion for summary judgment in her official capacity shall be, and is hereby, **GRANTED**. Further, White's first motion for summary judgment in her individual capacity and second motion for summary judgment in her individual capacity shall be, and are hereby, **DENIED**.