**Edward W. READ, Lisa R. Thompson, and Sherry R. Britt**

v.

**Sheriff's Deputy Carson ATTAWAY, Sheriff Boyd Durr and State Farm Fire & Casualty Ins. Co.**

Civil Action No. 95–1798.

United States District Court, W.D. Louisiana, Alexandria Division.

Sept. 26, 1996.

---

Howard N. Nugent, Jr., D. Reardon Stanford, Alexandria, LA, for Edward W. Read, Lisa R. Thompson, Sherry R. Britt.

Thomas T. Townsend, Kelly Townsend & Thomas, Natchitoches, LA, Ronald E. Corkern, Jr., Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, LA, for Carson Attaway, Boyd Durr.

Steven D. Crews, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, LA, W. Marvin Hall, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for State Farm Fire & Casualty Insurance Co.

LITTLE, District Judge.

### RULING

For the reasons that follow, defendant Boyd Durr's motion to dismiss and, in the alternative, for summary judgment is GRANTED.

### I. FACTS AND PROCEEDINGS

This matter arises out of a tragic altercation between Joseph Read and Natchitoches Parish Deputy Sheriff Carson Attaway during which Attaway, using his Sheriff's Department revolver, shot and killed Read. Apparently, there was a dispute between Read and Attaway's daughter over the custody of Attaway's grandson. Custody of the child had been awarded to Read, but, for a time, the child could not be located.

Approximately two weeks before the shooting, Billy West, a Natchitoches attorney, came to the office of Boyd Durr, the Sheriff of Natchitoches Parish. West believed that Attaway might know his grandson's whereabouts. Durr called Attaway, who was on duty at the time, to his office and in his presence, West asked Attaway where

the child was and indicated that he might bring charges against Attaway if he failed to reveal the child's location. Attaway stood up, pointed at West and told him that if he filed charges, Attaway would "sue the hell out of him for false arrest." Durr noted that Attaway was "red faced and upset at this point," but made no threats against West or Read. Durr then terminated the meeting, which had lasted only a few minutes, and indicated that Attaway and West would have to resolve their differences without his assistance. According to Durr, this was the first time he had heard of the custody dispute. In any event, Durr took no action to discipline Attaway nor did he request that the Sheriff's Department personnel screening committee investigate Attaway's fitness for duty. There was no reason to do so, according to Durr.

About a month later, Attaway went to Read's home and after an altercation, shot Read with his (Attaway's) service revolver. Attaway was not on duty at the time. Durr explained in his deposition that Attaway, a full-time commissioned deputy sheriff, had the right to carry his service weapon even when he was not on duty. Attaway claimed that the altercation with Read had become violent, and that he shot Read in self-defense.

Plaintiffs, the major children of Joseph Read, brought this action against Durr, individually and in his capacity as Sheriff of Natchitoches Parish, under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, and claims under Louisiana law. Durr now moves for dismissal of the claims against him or, in the alternative, for summary judgment of the federal claims against him. Durr argues that if this motion is granted as to the federal claims against him, this court will lack jurisdiction to hear the state claims. Defendant's motion for summary judgment as to the federal claims is GRANTED; the pendant state claims are DISMISSED without prejudice.

### II. STANDARD OF REVIEW

Both parties have submitted exhibits with their memoranda, and we treat the motion as

one for summary judgment only. Fed. R.Civ.P. 12(b). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed. R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### III. LAW AND ANALYSIS

A. *Liability under 42 U.S.C. § 1983 In General*

■ Plaintiffs' federal claim against Durr is based on 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . ., subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To make out any claim under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law and (2) that this conduct deprived the plaintiff of rights secured by the Constitution or federal statutes. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Evans v. City of Marlin, Texas*, 986 F.2d 104, 107 (5th Cir.1993).

B. *Durr's Liability in his Official Capacity*

■ In order to establish municipal liability, that is, through liability for a claim brought either directly against the municipality or brought indirectly against a municipal officer in his official capacity,[1] a plaintiff must show that a municipal policy or custom actually inflicted the constitutional injury which the plaintiff allegedly suffered. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). A local government cannot be held liable for the actions of its officers merely on a theory of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036. Rather, the plaintiff must show that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

■ Plaintiffs did not argue that Durr had established or failed to establish a particular policy that caused a constitutional violation. They also did not argue that Durr is the final decision maker on setting standards for and reviewing individual employee's mental health. In any event, it is doubtful that Durr's failure to investigate Attaway's mental health in this one instance could amount to a municipal policy. *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Webster v. City of Houston*, 735 F.2d 838 (5th Cir.1984); *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir.1992). Even

---

1. The Supreme Court has recognized that suits against municipal officers in their official capacity are an alternate means of bringing a claim against the municipality itself. *Monell*, 436 U.S. at 690 n. 55, 98 S.Ct. at 2036 n. 55. *Hafer v.* *Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991). The claim here against Durr in his official capacity is treated as a claim against Natchitoches Parish. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996).

assuming that this incident constituted a municipal policy, as discussed below, there is insufficient evidence demonstrating a causal link to Attaway's later shooting of Read to support a finding of liability against Durr in his official capacity.

## C. *Durr's Personal Liability*

■■■■ A supervising officer [2] may be personally liable under § 1983 only if: (1) he was personally involved in an act causing the deprivation of constitutional rights; or (2) his action or inaction, such as insufficient training or supervision, is connected to the alleged constitutional violation. *Baker v. Putnal,* 75 F.3d 190, 199 (5th Cir.1996). Specifically, a connection to the violation is found where the plaintiff establishes that (1) the supervisor failed to supervise or train the subordinate, (2) a causal connection existed between such a failure and the violation of plaintiff's rights, and (3) the supervisor's action amounted to gross negligence or deliberate indifference. *Id.; see also Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (holding that a negligent act by a government official that causes the loss of or injury to life, liberty or property does not implicate the Due Process Clause); *Mouille v. City of Live Oak, Texas,* 977 F.2d 924, 929 (5th Cir.1992); *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986).

### 1. *Personal Involvement in a § 1983 violation*

■■■ The plaintiffs do not allege that Durr was present at the shooting. Any argument that Durr was personally involved must be based on the meeting involving attorney Billy West. There is no evidence that Durr encouraged Attaway's anger, that Attaway threatened violence, or that Durr condoned any threats that Attaway may have made. At most, Durr could be credited with acquiring the suspicion that Attaway might sue West or Read. No reasonable jury, however, could characterize this as participation in the shooting.

### 2. *Connection to a § 1983 violation*

■■■ Plaintiffs have claimed that Durr's failure to supervise Attaway more closely after the incident he witnessed between Attaway and West caused their father's death. They suggest that Durr should have informed himself more about the circumstances of the custody dispute and, had he done so, that he would have taken action such as ordering an investigation by the Department's personnel Screening Committee or revoking Attaway's right to carry a service weapon in order to protect Read. Plaintiffs further claim that this failure to supervise constitutes gross negligence or deliberate indifference, giving rise to § 1983 liability.

No evidence has been offered to show that Attaway had a history of volatile behavior. No reasonable jury could find that the meeting with West provided Durr with knowledge of any emotional problems that Attaway may have had. Nor could a reasonable jury find that the brief, though perhaps heated, exchange in which Attaway threatened to sue West, alone, put Durr on notice of Attaway's intent to do violence to Read. Absent such knowledge, there cannot be a failure to supervise. *Thompkins v. Belt,* 828 F.2d 298 (5th Cir.1987). Furthermore, even if it could be established that Durr failed to supervise Attaway, no reasonable jury could find a causal connection to a constitutional violation. Attaway threatened to sue, not physically harm, West or Read. There was at least a two-week delay between the meeting with West and the shooting, further attenuating the causal link between Durr's inaction and the shooting. Even assuming that Durr realized the potential harm that Attaway could pose to the public and that his inaction could be logically linked to the shooting, Durr's failure to act does not amount to gross negligence or deliberate indifference.

Thus, the Court finds that Durr is not personally liable under § 1983. He was not personally involved in the shooting, nor was his action or inaction sufficiently connected to the deprivation of a federal right.

---

**2.** As with municipal liability, a supervisory officer cannot be liable for the actions of his subordinates solely on the theory of respondeat superior. *Mouille v. City of Live Oak, Texas,* 977 F.2d 924, 929 (5th Cir.1992); *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986).

### D. *Pendant State Claims*

Federal jurisdiction over pendant state claims is governed by 28 U.S.C. § 1367, which states:

> [I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

> [T]he district court *may decline to exercise supplemental jurisdiction* over a claim under subsection (a) if— ... (3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).

 As this Court had granted summary judgment as to all of the federal claims, it finds it appropriate to dismiss the pendant state claims without prejudice. *Rhyne*, 973 F.2d at 395.

### IV. CONCLUSION

For the reasons stated above, defendant Boyd Durr's motion for summary judgment is GRANTED and the pendant state claims are DISMISSED WITHOUT PREJUDICE.