**Yazied JABR and Fatima Jabr, individually and on behalf of their minor children, Hesen Jabr and Ibrahim Jabr**

**v.**

**RAPIDES PARISH SCHOOL BOARD, By and Through its President, Rodessa METOYER; Dr. Patsy Jenkins, Superintendent of Schools in her official capacity, John Cotton, principal, Paradise Elementary School in his official capacity**

No. CIV. A. 01–0623.

United States District Court, W.D. Louisiana, Alexandria Division.

Sept. 27, 2001.

---

David D. Benoit, Breaux Bridge, LA, Marjorie R. Esman, New Orleans, LA, for Plaintiffs.

Michael T. Johnson, Alexandria, LA, for Defendants.

### MEMORANDUM RULING

LITTLE, Chief Judge.

Before this court is plaintiffs Yazied and Fatima Jabr's, ("the Jabrs"), opposed Motion for Partial Judgment on the Pleadings [Doc. No. 6], filed on 25 June 2001 against defendants Rapides Parish School Board ("the School Board"), Dr. Patsy Jenkins ("Jenkins"), and John Cotton ("Cotton"), pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). The Jabrs initiated this action on behalf of their minor children, Hesen Jabr and Ibrahim Jabr. Specifically, the plaintiffs' Motion for Partial Judgment on the Pleadings concerns the defendants alleged, unlawful distribution of New Testament Bibles in the public schools of Rapides Parish, Louisiana on 14 December 2000. Plaintiffs contend that the alleged distribution of Bibles violates the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution. Further, the Jabrs seek the following: (1) a declaratory judgment under 28 U.S.C. §§ 2201 & 2202, and 42 U.S.C. § 1983, which declares that the distribution of Bibles by the School Board in the public schools of Rapides Parish violates the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution; and (2) a preliminary and permanent injunction pursuant to Rule 65 of the FRCP, 42 U.S.C. § 1983, and 20 U.S.C. §§ 4071–74, enjoining the School Board from distributing Bibles at all public schools under the jurisdiction of the School Board in the manner the School Board distributed Bibles on 14 December

2000. Upon careful consideration of the motion, response, reply, the pleadings on file in this case, and the applicable law, this court GRANTS IN PART AND DENIES IN PART the motion for the reasons stated herein.

## I. PROCEDURAL & FACTUAL BACKGROUND

The Jabrs are the parents of the minor children, who both attend Paradise Elementary School ("the School"), which is located in Pineville, Parish of Rapides, Louisiana. The School falls within the jurisdiction of the School Board. Additionally, the Jabrs reside within the jurisdiction of the School Board and are practicing members of the Muslim faith.

Paragraphs 9 and 10 of the plaintiff's complaint state the following:

Hessen Jabr is presently enrolled in Gayle Barnhill's fifth grade class at Paradise Elementary School. On December 14, 2000, she and other girls in her class were instructed to go to the office of the Principal John Cotton directly after physical education class. They lined up single file outside the office and were escorted inside, where Cotton presented each child with a copy of the Bible. With the Bible, Cotton wished each girl a "Merry Christmas." [1]

Hesen Jabr declined to accept the Bible, saying "no, thank you" to Cotton when he presented it to her. Cotton told Hesen to "just take it," and because she felt pressured by the principal of her school, Hesen accepted the Bible from him. [2]

Plaintiffs contend that during school hours on 14 December 2000, school personnel directed the student, and all other fifth-grade students, to report to the principal's office directly after their physical education class. Further, after being lined up single-file, outside the principal's office, someone escorted the class, including the student, into the principal's office, where the principal "*presented*" (emphasis added) all students with a copy of the New Testament Bible ("Bible"). Afterwards, the principal wished each student a "Merry Christmas."

Plaintiffs claim that the student initially declined to accept the Bible from the principal; however, when the principal stated "just take it," the student felt pressured by the principal and subsequently accepted the Bible. After leaving the principals office, the plaintiffs aver that the student suffered scorn and ridicule from other students after explaining that she did not "read the Bible because her family does not believe in it." The plaintiff's account of events surrounding what happened in the principal's office on 14 December 2000 is somewhat dissimilar to defendant's version.

On 10 May 2001, defendants filed an Answer to plaintiff's complaint:

Defendants admit that Hesen Jabr is a fifth-grade student at Paradise Elementary School and that on December 14, 2000, John Cotton wished each and every student in the fifth-grade, including Hesen Jabr, a happy holiday and offered them a copy of the Bible. At no time was the gift forced upon Hesen Jabr and at all times, it was clear that Hesen Jabr had a choice of whether or not to accept said gift. All other allegations contained in paragraph 9 of plaintiffs' complaint are denied. [3]

In the Answer, defendants denied plaintiffs' allegations that a school official instructed the student's class to wait outside the principal's office, but do not explain

---

1. *See* Pls.' Compl. at ¶ 9.

2. See Pls.' Compl. at ¶ 10.

3. *See* Defs.' Answer at ¶ 9.

how the student came to be at the principal's office on 14 December 2000. Instead, defendants claim that the principal "wished each and every student in the fifth-grade a happy holiday and '*offered*' (emphasis added) them a copy of the Bible." *See* Defs.' Answer at ¶ 9. Defendants also contend that the principal did not force the "*gift* " (emphasis added) upon the student and further allege the following: "it was clear that the student had a choice of whether or not to accept said gift." *Id.*

On 25 July 2001, plaintiffs filed an opposed Motion for Partial Judgment on the Pleadings under Rule 12(c) of the FRCP alleging defendants, in paragraph 9 of their Answer, admitted to distributing unlawfully Bibles in the public schools, thereby violating the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution.

## II. LAW AND ANALYSIS

This court has jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and pendent jurisdiction of the claims asserted under the Louisiana Constitution and laws. Jurisdiction is not disputed.

### A. *Standard of Review*

The plaintiffs seek relief pursuant to Rule 12(c) of the FRCP. A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay the trial. *See* Fed. R.Civ.P. 12(c). A Rule 12(c) motion is appropriate where a judgment on the merits can be rendered by examining the substance of the pleadings and any judicially-noticed facts. *See Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990). Judgment on the pleadings is appropriate only if the moving party clearly establishes that no material issue of fact remains to be solved,

and that it is entitled to judgment as a matter of law. *See Adams v. Davis,* 2001 WL 815592, at *1 (E.D.La. July 18, 2001). In determining a Rule 12(c) motion for judgment on the pleadings, a court must accept the non-moving party's allegations as true. *See id.*

The standard applied on a Rule 12(c) motion is essentially the same as that applied on Rule 12(b)(6) motions; i.e., judgment on the pleadings is appropriate when, even if all material facts in the pleading attacked are true, the moving party is entitled to judgment as a matter of law. *See Hebert Abstract Co.,* 914 F.2d at 76. In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts or defenses in the complaint or answer as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). In reviewing such a motion, the court cannot look beyond the face of the pleadings. *Id.; see also Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). Moreover, all inferences reasonably drawn from these facts must be construed in favor of the responding party. *See Voest–Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir.1998). Therefore, when evaluating a motion to dismiss under FRCP 12(b)(6), this court must construe the School Board's answer in the light most favorable to the School Board and take the factual allegations or affirmative defenses contained therein as true. *See Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991); *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288 (5th Cir.1977).

As Rule 12(c) makes clear, "any party" may move for judgment on the pleadings as to an opposing party's pleadings. *See* Fed.R.Civ.P. 12(c). Thus, a motion for judgment on the pleadings may be filed by plaintiff, as well as defendant. *Id.* The Jabr's motion can be granted, however,

only if all of the defenses raised in the answer are legally insufficient; that is, if the answer fails to controvert a material fact alleged in the complaint. Here, the Jabrs are moving for partial judgment on the pleadings relating to the School Board's distribution of Bibles in the school on 14 December 2000 only; therefore, we will apply the standards outlined above to the plaintiffs' motion.

### B. Liability under 42 U.S.C. § 1983 In General

Plaintiffs assert a claim under 42 U.S.C. § 1983 against the School Board, Jenkins, and Cotton; the claims against Jenkins and Cotton are in their official capacities. Plaintiffs' federal claim against defendants is based on 42 U.S.C. § 1983, which states:

> Every person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . ., subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs allege that the distribution of Bibles by the defendants in the public schools of Rapides Parish constituted conduct committed by a person acting under color of state law, which violated the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution. To make out any claim under § 1983, a plaintiff must demonstrate the following: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights secured by the Constitution or federal statutes. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Ev-*

*ans v. City of Marlin, Texas,* 986 F.2d 104, 107 (5th Cir.1993); *Read v. Attaway,* 944 F.Supp. 480, 483 (W.D.La.1996).

As a preliminary matter, this court first addresses plaintiffs' claims against Jenkins and Cotton in their official capacities.

### 1. Plaintiffs' § 1983 Claims Against Jenkins and Cotton in Their Official Capacities

Currently, Jenkins, who is Superintendent of the Rapides Parish School Board, and Cotton, who is principal of Paradise Elementary School, are both employed by the School Board. A parish school board is a quasi-municipal corporation, which is governed by the rules applicable to municipalities. *See La. Associated Gen. Contractors, Inc., v. Calcasieu,* 586 So.2d 1354, 1367 (La.1991). As the Fifth Circuit has noted, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 484–85 (5th Cir. 2000) (holding that official capacity claims and the claims against the governmental entity essentially merge). Official capacity claims are unnecessary in cases where the governmental entity has also been sued, because all of the claims involve identical issues and the entity will indemnify the officials in the event of a judgment against them. *See Doe v. Rains Indep. Sch. Dist.,* 865 F.Supp. 375, 378 (E.D.Tex.1994).

Plaintiffs' official capacity claims against Jenkins and Cotton are redundant of their action against the School Board. Not only are the disputed issues requiring resolution in conjunction with the official capacity claims the same as those that must be resolved with plaintiffs' action against the School Board, but the School Board will be required to abide by the same judgment entered against either Jenkins or Cotton. Accordingly, plaintiffs' claims against Jen-

kins and Cotton in their official capacities are dismissed.

### 2. *Plaintiffs' § 1983 Claims Against the School Board*

In this case, defendants have attempted to claim that the issue is not about the religious clauses of the First Amendment to the United States Constitution, but about the manner by which the School Board distributed New Testament Bibles. Here, defendants concede that the principal made the Bibles available by "offering" the Bibles as a "gift" to the students. According to defendant's, however, making Bibles available for students to pick up in the principal's office from atop his desk does not run afoul of the Establishment Clause because "making Bibles available" is fundamentally different than "distributing" or "presenting" Bibles to students. For Rule 12(c) purposes, we must accept defendant's characterization of their actions as true.

The plaintiff's challenge to defendant's actions on 14 December 2000, arises out of the First Amendment to the United States Constitution, which proclaims simply that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" and out of Article 1, § 8 of the Louisiana Constitution, which states that "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof." [4] For this court to determine whether the School Board, by making Bibles available to students in the principal's office, violated the Establishment Clause,[5] regardless of whether the method of making Bibles

available is clothed as "distributing," "presenting," "offering," or "giving," we must turn to jurisprudence that helps establish the legal boundaries of the Establishment Clause.

A surfeit of case law exists, which aid in interpreting the Establishment Clause, and the Fifth Circuit has identified three (3) tests that the Supreme Court has used to determine whether the School Board's actions on 14 December 2000 constitute an establishment of religion. *See Ingebretsen v. Jackson Public School Dist.*, 88 F.3d 274, 278 (5th Cir.1996); *Jones v. Clear Creek Indep. School Dist.*, 977 F.2d 963, 972 (5th Cir.1992). Government action, which is challenged under the Establishment Clause, does not need to be examined under each of the three Supreme Court tests; instead, the decision to apply a particular Establishment Clause test rests upon the nature of the Establishment Clause violation asserted. *See Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 343 (5th Cir.1999). In order to examine fully the facts in this case, however, we will use all three tests to analyze and resolve whether the School Board's actions on 14 December 2000 unlawfully trespasses upon the Establishment Clause.

This brings us to the first test. In *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), the Court articulated what has come to be known as the 3–pronged, *Lemon* test. Under *Lemon*, a government practice is unconstitutional if any of the following occur: (1) it has a non-secular

---

4. The prohibitions contained in the First Amendment to the United States Constitution were rendered applicable to the states in the Fourteenth Amendment. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (applying the Establishment Clause to the states); *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed.

1213 (1940) ( applying the Free Exercise Clause to the states).

5. Because the language in both the federal and state constitution are identical in this respect, the clauses at issue shall be referred to in the singular as "the Establishment Clause."

purpose; (2) its primary effect either advances or inhibits religion; or (3) it excessively entangles government with religion. *Id.* In order for the School Board's actions on 14 December 2000 to satisfy the first *Lemon* test, a sincere secular purpose for making the Bibles available must exist, even if the secular purpose is combined with other religious purposes. *See Freiler,* 185 F.3d at 344 (citing *Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985)). Here, the School Board does not articulate, or attempt to articulate, a secular purpose for making the Bibles available to the school's fifth-grade students. Instead, this court is left to hypothesize and enunciate a secular purpose on our own, a task we will not perform. Instead, we turn to relevant case law for instruction.

In *Berger v. Rensselaer Cent. Sch. Corp.,* 982 F.2d 1160, 1171 (7th Cir.1993), the court held that classroom distribution of Gideon Bibles to fifth grade public school students by non-school personnel did not have a secular purpose, advanced religion in the public schools, and excessively entangled government with religion in violation of the Establishment at Clause. *See Berger,* 982 F.2d at 1171. Also, in *Berger,* the classroom teachers did not even participate in the handing out of the Bibles, they merely observed private citizens, known as Gideons, distribute the Bibles to students. *See id.* Here, the School Board concedes that the principal personally made New Testament Bibles available on his desk and in his office to the fifth-grade students, but fails to express even one secular purpose for the practice. The School Board's actions, therefore, establish a non-secular purpose under the first *Lemon* inquiry.

*Lemon's* second prong asks whether "the practice under review in fact conveys a message of endorsement or disapproval," of religion regardless of the School Board's actual purpose. *Doe v. Santa Fe Indep. Sch. Dist.,* 168 F.3d 806, 817 (5th Cir.1999). Under this test, the Supreme Court has cautioned that a governmental practice may not aid one religion, all religions, or favor one religion over another. *See, e.g., County of Allegheny v. ACLU,* 492 U.S. 573, 605, 109 S.Ct. 3086, 3107, 106 L.Ed.2d 472 (1989). "[A] government may not demonstrate a preference for one particular sect or creed (including a preference for Christianity over other religions)." *Id.* Nothing could be more unabashedly Christian than the New Testament Bibles. *See Berger,* 982 F.2d at 1170. "Permitting distribution of 'The New Testament' ... affront[s] not only non-religious people, but all those whose faiths, or lack of faith, does not encompass the New Testament." *Id.* Clearly, a School Board practice that permits the school principal to tender New Testament Bibles to fifth grade students has the purpose of promoting and approving Christianity. *See Lemon,* 403 U.S. at 612–13, 91 S.Ct. 2105; *see also Berger,* 982 F.2d at 1171.

Defendants offer *Meltzer v. Bd. of Public Instruction of Orange County, Florida,* 577 F.2d 311, 312 (5th Cir.1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979)(Meltzer II), for the proposition that making Bibles available to fifth-grade students in the principal's office does not offend the Establishment Clause. The School Board's reliance on *Meltzer II,* however, is misplaced. In *Meltzer II,* the court upheld distribution of Bibles in public schools, but only after the School Board passed stringent guidelines, which strictly controlled the location and means of distributing the Bibles. The guidelines passed in *Meltzer II* are set forth below:

GUIDELINES

The following are guidelines for the principals of the Orange County District School Board schools for handling of

religious books or doctrine offered to the schools for free distribution . . .

2. Books and literature be available to students only at the designated location.

3. All faiths be allowed to provide books and literature under the terms of these guidelines.

4. No distribution nor allowing of distribution of books and literature be undertaken through the classroom, home rooms, in assembly or on any portion of school property by the staff, students, or outsiders . . .

6. No school employee may comment upon . . . or in any way influence others concerning the literature or concerning the taking or reading of the literature.

See *Meltzer II*, 577 F.2d at 313–14. The School Board's actions in this case do not even border on meeting the guidelines outlined in *Meltzer II*. The principal's actions on 14 December 2000 would have violated each of the guidelines enumerated in *Meltzer II*. Simply put, the School Board meets *Lemon's* second test of unconstitutionality when the principal made Bibles available to fifth-grade students on 14 December 2000.

Finally, the School Board's actions on 14 December 2000 are unconstitutional when measured by the third prong of the *Lemon* test. Where a school administrator participated in prayers in his official capacity, the prayer policy excessively entangled government with religion. *See Ingebretsen*, 88 F.3d at 279. Teachers, who did not actively participate in Bible distribution, but merely observed non-school personnel distribute the material, became excessively entangled with religion in violation of the Establishment Clause. *See Berger*, 982 F.2d at 1162–63. The principal of an elementary school is the most prominent and imposing authority figure in the school. Therefore, when the School Board permitted the principal to make Bibles available to students in the principal's office, the principal became excessively entangled with religion.

Under *Lemon* then, the School Board, by making Bibles available in the fashion the principal did on 14 December 2000, acted unconstitutionally for these reasons: (1) its purpose is to advance religion in the public schools; (2) its effect is to advance religion in the public schools; and (3) it excessively entangles government with religion. *See Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105; *Berger*, 982 F.2d at 1171; *Ingebretsen*, 88 F.3d at 279.

■ The second test used by the Court in analyzing school-sponsored Establishment Clause disputes focuses on the coercive effect that the activity has on students. *See Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (holding unconstitutional a school district's policy, which permitted a school principal to invite clergy to give "nonsectarian" invocations and benedictions at graduation ceremonies). Under this test, school-sponsored activity contravenes the First Amendment when "(1) the government directs (2) a formal exercise (3) in such a way as to oblige the participation of objectors." *Freiler*, 185 F.3d at 343 (citing *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 970 (5th Cir.1992))(Clear Creek II). "The inquiry with respect to coercion must be whether the government imposes pressure upon a student to participate in a religious activity." *See Peck v. Upshur County Bd. of Educ.*, 155 F.3d 274, 287 (4th Cir.1998)(citing *Bd. of Educ. of Westside Cmty. Schools v. Mergens*, 496 U.S. 226, 261, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)). Here, defendants argue that when the principal placed Bibles on his desk, the school did not place any pressure or coerce the child to take the Bible because the child could freely decide whether to accept or reject possession of the Bible. We disagree.

It is obvious to the court that a school official directed the fifth-graders to report to the principal's office, where the Bible offering was made. We reject the School Board's argument that a ten or eleven-year-old fifth-grade student has the discretion to resist accepting a Bible offered by an elementary school principal in his office and in front of the student's peers.

Many cases have focused on the impressionability of students in elementary and secondary schools and the pressure they feel from teachers, administrators, and peers. *See e.g., Edwards v. Aguillard,* 482 U.S. 578, 584, 107 S.Ct. 2573, 2577, 96 L.E.2d 510; *Lee,* 505 U.S. at 593, 112 S.Ct. at 2658; *Berger,* 982 F.2d at 1169. Expecting a student troubled by a religious exercise to object in this setting is unrealistic. *See Berger,* 982 F.2d at 1169–70 (citing *School Dist. of Abington Township v. Schempp,* 374 U.S. 203, 288–293, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)). In *Abington,* a school policy that permitted parents to excuse their children from sitting in class while students or other school officials read Bible passages over the intercom system, did not "mitigate the obligatory nature of the ceremony." *Abington,* 374 U.S. at 288, 83 S.Ct. 1560. Also, almost 90 years ago, the Louisiana Supreme Court considered and rejected a similar argument to one that the defendants now espouse. *See Herold v. Parish Bd. of School Directors,* 136 La. 1034, 68 So. 116, 121 (1915) (explaining that permitting a student to excuse himself from class during school-sponsored Bible readings subjects that student to a stigma, due to that student's religious belief, which is the functional equivalent of forcing that child to stay in class.). *See Herold,* 68 So. at 121. Here, even if we assume the principal did not tell the student: "just take [the Bible]," "[i]n elementary schools, the concerns animating the coercion principle are at their strongest because of the impressionability of young elementary-age chil-

dren." *Peck,* 155 F.3d at 288. In this case, the School Board argues that by "passively" and "neutrally" making Bibles available to students, they did not coerce the child to take a Bible. Even when we assume that the principal "passively" or "neutrally" offered the Bibles to the students, to expect the child, a fifth-grade student, to abstain from taking a copy of the Bible, by voluntarily walking out of the principal's office, in front of the principal and fellow students, is unrealistic. The pressure created by the principal in his office was coercive and, thus, illegal.

Alternatively, the School Board offers *Peck* in defense of its position that a principal, who personally distributes New Testament Bibles to students, does not violate the Establishment Clause nor coerce or place pressure on the child to accept a Bible if the principal "passively" distributed Bibles to students. Defendants' reliance on *Peck* for support is unsound because the facts and holding in *Peck* are radically different from this case.

In *Peck,* high school administrators set up a table on school property, but outside of the formal classroom setting, where it placed religious and nonreligious material, and then permitted students simply to walk past the table, and view the offerings without school officials present. *See id.* at 287. Further, the table contained a disclaimer, which renounced any school endorsement. *Id.* Here, the principal distributed Bibles in his office, at his desk, in the presence of other fifth-grade students. This court can imagine no more intimidating or coercive environment in an elementary school than those conditions in the principal's office. In *Peck,* the court held that "the state does not violate the Establishment Clause when it permits entities to passively offer the Bible or other religious material to secondary school students on a single day during the year

pursuant to a policy of allowing private religious and nonreligious speech in its public schools." *Id.* at 288. Conversely, we find nothing passive or neutral about the principal's distribution of Bibles here. The School Board, by permitting the principal of the school to make Bibles available for students in his office, on his desk, in front of the child's peers, after summoning the students to his office, fails the *Lee* test because the school totally disregards the coercive influences on impressionable children.

■ The third method of analyzing Establishment Clause disputes is known as the "endorsement" test, where the Court has disapproved of governmental practices that have the perception of endorsing religion. *See Allegheny,* 492 U.S. at 594, 109 S.Ct. at 3101 (holding that the display of a nativity scene on the Grand Staircase of the Allegheny County Courthouse violated the Establishment Clause, but that the secular display of a menorah as part of an overall secular exhibit was constitutional). The government unconstitutionally endorses religion whenever it "conveys a message that religion is 'favored,' 'preferred,' or 'promoted' over other beliefs or when [it] appears to take a position on questions of religious belief." *Allegheny,* 492 U.S. at 593–94, 109 S.Ct. 3086 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687, 104 S.Ct. 1355, 1366, 79 L.Ed.2d 604 (1984)). "What is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion." *Bell v. Little Axe Indep. School Dist. No. 70,* 766 F.2d 1391, 1403 (10th Cir.1985) (citing *Lynch,* 104 S.Ct. at 1368). Here, defendants once more prod the "neutrality argument"; that is, the principal made Bibles available in a "neutral" manner, which did not endorse any religious belief, because the school had an "unwritten" policy that permitted other religious and non-religious groups to distribute literature in the school. Again, defendant's reasoning is unsound.

Defendants continue to ignore the particular vulnerability of elementary school children to authority figures, especially teachers and school administrators. *See Bell,* 766 F.2d at 1404, n. 11 "Elementary school children are vastly more impressionable than high school or university students and cannot be expected to discern nuances which indicate whether there is true neutrality toward religion on the part of a school administration." *Id.* at 1404. Furthermore, in *Peck,* a case that defendants relentlessly and erroneously rely on for support, the court held that the School Board's policy of permitting private entities to offer passively the Bible or other religious material to secondary school students on a single day during the year, pursuant to a policy of allowing private religious and nonreligious speech in its public schools was "unconstitutional to the extent that it allows the display of Bibles and other religious material in the elementary schools of the County." *Peck,* 155 F.3d at 288. The court reasoned that elementary school children would not be able to recognize fully and appreciate the difference between government and private speech, "a difference that lies at the heart of the neutrality principle," thereby being more easily "(mis)perceived as endorsement rather than neutrality." *Id.* An Establishment Clause violation, therefore, weighs more heavily when younger, more impressionable students are involved. *See Bell,* 766 F.2d at 1407. The School Board's action of permitting the principal of the school to offer, give, or make available Bibles to elementary school students in his office, in the presence of other students is an unconstitutional endorsement of religion because it allowed the principal, in his capacity as a school official, to set aside a special time for a religious exercise that it did not set aside for anything else, thereby creating an impression that the

school endorsed a particular religious belief: Christianity.

The School Board, however, cites two cases, *Rosenberger v. Rector of Univ. of Virginia,* 515 U.S. 819, 842, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), and *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), in defense of its position that as long as other religious groups are permitted to distribute literature in the school, then making Bibles available in the principal's office does not offend the Establishment Clause. These cases, in which the Supreme Court found that governmental action did not violate the Establishment Clause are distinguishable from the facts of the instant action.

In *Lamb's Chapel,* the Court held that using a public school after school hours for the showing of religiously oriented films did not violate the Establishment Clause. *See Lamb's Chapel,* 508 U.S. at 395, 113 S.Ct. at 2148. The Court found that "this film series would not have been during school hours, would not have been sponsored by the school, and would have been open to the public." *Id.* at 395, 113 S.Ct. at 2148. The Court concluded that, under these circumstances, there was no realistic danger that the community would think that the school district was endorsing religion.

There are few, if any, parallels between the instant case and *Lamb's Chapel.* Here, Bibles were available to students during school hours, by the principal of the school, in the principal's office. Moreover, there is a much greater danger of students perceiving that the School Board endorses religion, specifically Christianity, because the principal made available copies of the New Testament Bible only.

The School Board's reliance on *Rosenberger* is misplaced as well. In that case, the Court held that the University of Virginia's funding of religious and non-reli-

gious newspapers did not violate the Establishment Clause. *See Rosenberger,* 515 U.S. at 840, 115 S.Ct. 2510. Specifically, the case involved the use of student activity fees and the University of Virginia's use of those fees. *Id.* The Court concluded that the "government's neutrality is apparent because it has not fostered or encouraged any mistaken impression that the student newspapers speak for the University ... [t]he University has taken pains to disassociate itself from the private speech involving the student newspapers." *Id.* at 841, 115 S.Ct. 2510.

Unlike the facts in *Rosenberger,* the School Board made Bibles available to students during school hours, by the principal of the school, in the principal's office. As such, we conclude that the School Board's actions in making Bibles available to students impermissibly advanced religion, thereby violating the endorsement test.

As we have shown, under any of three (3) Supreme Court tests for analyzing Establishment Clause disputes, the School Board, by making Bibles available to students in the manner we have described, violated the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution. As a result, the plaintiffs Motion for Judgment on the Pleadings is granted as it relates to the School Board's distribution of Bibles on 14 December 2000 only.

Defendants also move for a declaration that the distribution of Bibles in the public schools of Rapides Parish, Louisiana, violates the Establishment Clause of the First Amendment to the United States Constitution and Article 1 § 8 of the Louisiana Constitution.

## C. *Declaratory Judgment Standard*

▉▉▉ The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a federal court to issue declaratory relief solely "[i]n a case

of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The Act's restriction of federal court jurisdiction to actual controversies extends to the constitutional limit of "cases and controversies" set forth in Article III. *See* U.S. CONST. art. III; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir.1986). As the Supreme Court has explained: [T]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and a precise test to identify the existence of a "controversy" is difficult to establish. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Nevertheless, the Supreme Court has held that declaratory relief is appropriate under the Declaratory Judgment Act when a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. *See id.* (citing *Aetna*, 300 U.S. at 239–42, 57 S.Ct. 461); *Louisiana Nev. Transit Co. v. Marathon Oil Co.*, 770 F.Supp. 325, 327 (W.D.La.1991) *aff'd* 985 F.2d 797 (5th Cir.1993). The controversy must be "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna*, 300 U.S. at 240–41, 57 S.Ct. at 464. For "[a] controversy, to be justiciable, [it] must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation than may never develop." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir.1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir.1967)). Here, plaintiffs do not request this court to issue a declaratory judgment related to this case's unique facts. Instead, plaintiffs request this court

to declare, in a blanket fashion, that all Bible distribution in the public schools of Rapides Parish violates the Establishment Clause. We refuse to do so for several reasons.

First, by requesting a total ban on distributing Bibles, plaintiffs do not present an actual case or controversy, with specific facts, of sufficient immediacy, and between specific parties having adverse legal interests, in order for us to declare legal rights or duties. Without specific facts and controversy, which at this time remain remote and speculative, this court cannot confidently reach any controlling legal issues in order to issue a declaratory judgment. And, second, under certain circumstances, some courts have permitted Bible distributions in public schools. *See Peck*, 155 F.3d at 287–89. Although it is not per se unconstitutional to introduce religion or religious concepts during school hours, there is a fundamental difference between introducing religion and religious concepts in "an appropriate study of history, civilization, ethics, comparative religion, or the like" and the School Board's distribution of Bibles now before us. *See Freiler*, 185 F.3d at 347 (citing *Stone v. Graham*, 449 U.S. 39, 42, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980)). Similarly, this court can imagine a situation where the School Board offers a comparative culture, ethics, history, civilization, or religion class, where Bibles and other religious and non-religious books are used as part of a basic course of study. Under this hypothetical scenario, distributing Bibles may not advance any particular religion or run afoul of any of the Establishment Clause tests.

For the foregoing reasons, this court denies plaintiffs' motion for declaratory judgment.

Lastly, defendants move this court to issue a preliminary and permanent injunction pursuant to Rule 65 of the FRCP, enjoining the School Board from distribut-

ing Bibles, as the principal of the school did on 14 December 2000, at all schools within the jurisdiction of the School Board. Plaintiffs allege that they will suffer irreparable injury if the School Board is permitted to continue distributing Bibles as the School Board did on 14 December 2000.

D. *Preliminary and Permanent Injunction*

The Fifth Circuit has held that "[i]njunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985).

 The Fifth Circuit has previously enumerated the prerequisites generally applicable for the grant of a preliminary injunction. *See Canal Auth. of State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Id.*

 Generally speaking, the standard for determining whether a permanent versus a preliminary injunction should issue is primarily the same, except that, in the former, the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits. *See Dye v. McKeithen,* 856 F.Supp. 303 (W.D.La.1994) (citing *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987)); *see also, Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1051 (5th Cir.1997). Here, plaintiffs have

demonstrated actual success on the merits on their Partial Motion for Judgment on the Pleadings. A preliminary injunction, therefore, is not appropriate. Rather, we need now to determine whether applying the prevailing law to the facts of this case warrants the issuance of permanent injunction.

 The plaintiffs' request for a permanent injunction relates to a constitutional violation. To be entitled to a permanent injunction from a constitutional violation, a plaintiff need only establish the fact that there has been such a violation. *See Dye,* 856 F.Supp. at 306. Consequently, plaintiff must demonstrate the existence of two elements: (1) continuing irreparable injury if the injunction does not issue; and (2) an inadequate remedy at law. *See id.* (citing *Newman v. State of Alabama,* 683 F.2d 1312, 1319 (11th Cir.1982) *cert. denied* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983)). In this case, then, because plaintiffs have established the fact of a constitutional violation, we need to determine if plaintiff faces continuing, irreparable injury if the injunction does not issue and whether plaintiffs have an inadequate remedy at law

 First, an injury is irreparable if it cannot be undone through monetary remedies. *See Lionhart v. Foster,* 100 F.Supp.2d 383, 392 (E.D.La.1999). Furthermore, it is well established that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury," which justifies the grant of injunctive relief. *Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981) (citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). On 14 December 2000, plaintiff lost First Amendment freedoms when defendant violated the Establishment Clause of the First Amendment to the United States Constitution. Second, under the facts of this case, plaintiffs

have no other adequate remedy at law aside from instituting this suit pursuant to 42 U.S.C. § 1983 et seq. Accordingly, there is a substantial threat of continuing irreparable injury if the permanent injunction is not granted and the School Board permitted to distribute Bibles in the public schools as the principal did on 14 December 2000.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Partial Judgment on the Pleadings under FRCP 12(c) is GRANTED as it relates to the distribution of Bibles by the School Board at Paradise Elementary School on 14 December 2000 only.

Further, IT IS ORDERED, ADJUDGED, AND DECREED, that a permanent injunction issue, enjoining the defendants, and their respective officers, agents, employees, successors, attorneys, and other persons under their direction and control, from distributing Bibles as the School Board distributed them in Paradise Elementary School on 14 December 2000.